UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMAL K.,[1] | ) |
| | ) |
| Plaintiff, | ) No. 3:23-cv-50372 |
| | ) |
| v. | ) Magistrate Judge Keri L. Holleb Hotaling |
| | ) |
| MARTIN J. O'MALLEY, Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Jamal K. appeals the decision of the Commissioner denying his application for supplemental security income ("SSI"). The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [Dkt. 12] is DENIED and Defendant's motion for summary judgment [Dkt. 20] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

### 1. SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW

According to the Social Security Act (the "Act"), a person is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). To determine whether an individual is disabled, an Administrative Law Judge ("ALJ") must apply a sequential five-step test. *See* 20 C.F.R. § 404.1520(a). The ALJ must evaluate whether:

> (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2] The Court construes "Plaintiff's Brief in Support of Social Security Appeal" [Dkt. 12] and "Defendant's Memorandum in Support of Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment" [Dkt. 20] as motions for summary judgment.

> impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Langley v. O'Malley*, No. 22-cv-3008, 2024 WL 3649021, at *2 (7th Cir. Aug. 5, 2024) (citation omitted). The burden of proof is on the claimant for the first four steps. *Id*. at *3. At Step Five, the burden shifts to the agency to show that "there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022) (citing 20 C.F.R. § 416.960(c)(2)). The Act requires all applicants to prove they are disabled as of their date last insured to be eligible for benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). If there is substantial evidence in support of the determination, the Court must affirm even if "reasonable minds could differ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018) (citation and quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (citation and quotation marks omitted). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion. *Hess*, 92 F.4th at 676. Yet an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

2

"All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054 (internal signals and citations omitted). Additionally, "[w]hen reviewing a disability decision for substantial evidence, [the Court] will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052-53.

## 2. BACKGROUND

On September 16, 2020, Plaintiff filed an application for SSI, alleging disability beginning the same day. [Administrative Record ("R.") 171, 201.] Plaintiff's application was denied initially and upon reconsideration. [R. 72, 90.] Plaintiff appealed the denials and an ALJ subsequently held an Administrative Hearing. [R. 49-71.] On December 28, 2022, the ALJ issued a decision denying Plaintiff disability benefits. [R. 34-41.] At Step One of that decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. [R. 36.] At Step Two, the ALJ determined Plaintiff had several medically determinable impairments, but did not find any of them to be severe impairments. [R. 36-41.] Therefore, the ALJ ended his analysis at Step Two, and ALJ found Plaintiff not disabled as defined by the Act since the date of his application. [R. 41.] Plaintiff then requested and was denied Appeals Council review [R. 1-14], rendering the Decision of the Appeals Council the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Plaintiff subsequently brought this action challenging the ALJ's decision. [Dkt. 1.]

## 3. DISCUSSION

Plaintiff contends the ALJ's December 28, 2022 decision requires remand because the ALJ (1) erred at Step Two of his analysis, when he failed to find Plaintiff suffered from any severe

impairments; (2) improperly evaluated the opinions of Samantha J. Reynolds, FNP-C; and (3) improperly evaluated Plaintiff's subjective symptoms. [Dkt. 12.] The Court disagrees, for the reasons articulated below.

### A. The ALJ's Step Two Analysis was Proper

At Step Two of the five-step sequential-evaluation process by which ALJs evaluate disability claims, it is the claimant's burden to prove his impairments are severe. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); 20 C.F.R. §§ 404.1512, 404.1520(a)(4)(ii), 404.1521. An impairment is severe if, for twelve months, it significantly limits one's ability to perform basic work-related activities like walking and understanding simple instructions. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1522; Social Security Ruling ("SSR") 85-28. Although Step Two has been described as "a *de minimis* screening for groundless claims intended to exclude slight abnormalities that only minimally impact a claimant's basic activities" *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (citation and internal quotations omitted), a plaintiff who challenges an ALJ's Step Two finding(s) nonetheless must do more than offer conclusory assertions; he must provide record citations and explain how they prove his alleged limitations. *Wolms v. Barnhart*, 71 F. App'x 579, 581 (7th Cir. 2003).

Here, the ALJ determined the medical evidence supported the existence of medically determinable impairments, including degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease ("COPD"), hyperlipidemia, gastroesophageal reflux disease ("GERD"), headaches, hearing loss, and cognitive impairment/dementia. [R. 36]; *see also,* 20 C.F.R. § 416.921 (establishing a medically determinable impairment). Plaintiff challenges the ALJ's findings as to his cognitive impairment and degenerative disc disease. [Dkt. 12 at 8-14.] Thus, the Court limits its discussion accordingly (as did the Commissioner, *see* Dkt. 20), and considers arguments that could have been made as to other impairments waived. *Schaefer v. Universal Scaffolding & Equip., LLC*,

839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

In the instant matter, the ALJ noted Plaintiff's allegation that his cognitive impairment was his primary problem, and that it caused difficulty with memory and concentration even though he took medication. [R. 37-38, 57-59.] The ALJ further noted that an EEG study and MRI of Plaintiff's neck supported the existence of his medically determinable impairments. [R. 38-39, 615-17.] The ALJ then cited at least five relevant regulatory factors indicating that the symptoms caused by these impairments were not persistent or intense enough to impose work-related functional loss.

First, a significant factor the ALJ relied upon, and one which Plaintiff fails to acknowledge, is the prior administrative medical findings of four different state agency reviewing physicians, all of whom agreed that Plaintiff's degenerative disc disease and neurocognitive impairment were non-severe. [R. 40-41, 80, 92-963]; 20 C.F.R. § 416.929(c)(1); SSR 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017) (identifying prior administrative medical findings as a relevant factor for determining impact of symptoms on functioning). Reviewing the record in January 2022, state agency psychologist J. Foster-Valdez, Ph.D., and state agency physician Jerry Dodson, M.D., considered the same evidence which Plaintiff now argues compelled a finding that his conditions were severe. That evidence included examination findings indicating Plaintiff scored 24/30 on a mini-mental state examination ("MMSE")[3] and exhibited impaired recent and remote memory during one examination in August 2021. [R. 93-94, 430, 511, 559.] Despite that evidence, both experts concluded Plaintiff's impairments were non-severe. R. 92-96. The ALJ reasonably found their conclusions persuasive,

---

[3] As of 2013, the MMSE was "the most frequently used brief cognitive instrument. The MMSE was developed in 1975 as a global assessment of cognitive status. A perfect score is 30 points; a score of 24 is the recommended, and most frequently used, cutpoint for dementia; a score of 23 or lower indicates dementia. A cutoff score for lesser forms of impairment, *e.g.*, mild cognitive impairment, has not been established or implemented with any consistency." Gluhm S., Goldstein J., Loc K., Colt A., Liew CV, Corey-Bloom J., *Cognitive Performance on the Mini-Mental State Examination and the Montreal Cognitive Assessment Across the Healthy Adult Lifespan*, Cogn. Behav. Neurol. 2013 Mar., 26(1):1-5, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3638088/ (last accessed 10/29/2024).

explaining they were consistent with Plaintiff's frequent denial of symptoms related to physical complaints, normal examination findings related to both physical and mental functioning, improvement with chiropractic treatment, conservative course of treatment, and ongoing ability to drive and do other activities despite alleged headaches and dementia. [R. 40-41.]

Second, the ALJ also relied on Plaintiff's consistently normal examination findings. 20 C.F.R. § 416.929(c)(2). The ALJ noted that Plaintiff's neurological and mental status exams were normal, showing good attention and concentration, and no impairment in memory. [R. 38-39.] He further noted that examination findings consistently showed Plaintiff was able to move normally, retained full strength, and walked normally. [R. 39.] In support of his findings, the ALJ cited generally to whole exhibits containing treatment records from Plaintiff's neurology specialists and primary care providers,[4] and also cited two specific findings revealing no impairment in Plaintiff's recent or remote memory. [R. 39 (citing 646, 666).] *See, e.g., Jennifer D. v. Comm'r of Soc. Sec.*, No. 21cv-1358, 2022 WL 18147203, at *5 (C.D. Ill. Dec. 23, 2022), report and recommendation adopted, No. 21-cv-1358, 2023 WL 131097 (C.D. Ill. Jan. 9, 2023) (noting, specifically in large part because of generally normal examination findings and a lack of findings supporting claimant's allegations of disabling symptoms, "[t]hat the ALJ found record support lacking for the extent of symptoms [plaintiff] experienced overall is obvious when the Decision is read as a whole…").

Third, the ALJ mentioned Plaintiff's reports he was benefitting from chiropractic treatment, both with regard to his memory and his spine. [R. 38, 40.] For example, Plaintiff reported in October 2021 that chiropractic treatment "made a big difference in his mental functioning." [R. 562.] It was proper for the ALJ to rely on Plaintiff's own statements to his physicians regarding his health and

---

[4] Plaintiff's neurology specialists consistently documented good attention and concentration and fluent speech, as well as normal gait, range of motion, and coordination. [R. 413, 420, 422, 425, 429, 432-33, 436, 459, 511, 514, 517, 681, 684, 777.] Plaintiff's primary care providers also noted normal findings such as full strength, normal gait, no speech disturbance, and no impairment in judgment or insight. [R. 334, 351, 356, 523, 527-28, 532, 537, 541, 544, 548, 552, 556, 563, 567, 570, 573, 635, 639, 643, 646, 650, 653, 657, 663, 666, 670.]

6

how his ailments and his treatments were affecting him. *See Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018) (an ALJ is permitted to consider the effectiveness of treatment in making his credibility determination).

Fourth, the ALJ also reasonably relied on Plaintiff's own statements. SSR 16-3p, 2017 WL 5180304, at *8. For example, the ALJ noted Plaintiff's testimony he had no trouble walking or sitting and consistently denied symptoms of pain, weakness, and fatigue. [R. 38 (citing R. 59).] The ALJ's findings about the reliability of a plaintiff's testimony and allegations are entitled to deference and should be upheld unless patently wrong, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Green v. Saul*, 781 F. App'x 522, 527 (7th Cir. 2019), meaning the analysis "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (citations omitted). Here, the ALJ supported his analysis by explaining he relied on Plaintiff's own self-reports of non-disabling symptoms.

Fifth and finally, the ALJ considered Plaintiff's activities of daily living. 20 C.F.R. § 416.929(c)(3)(i). The ALJ observed how Plaintiff stopped working as an Uber driver due to the pandemic and not because of his alleged cognitive problems. [R. 41, 55-56; *see* R. 429 (plaintiff reporting in May 2020 that his memory loss had started one year prior).] Despite his alleged cognitive difficulties, the ALJ noted that Plaintiff was still able to drive and perform his household chores. [R. 40-41; *see* R. 230, 697.] For these reasons, the ALJ reasonably discounted Plaintiff's subjective allegations and concluded Plaintiff had not carried his burden to prove that his impairments imposed any work-related functional loss.

Although Plaintiff contends the ALJ merely summarized the record [Dkt. 12 at 14], an ALJ need only "minimally articulate his or her justification" to satisfy his duty of building a "logical bridge." *Berger*, 516 F.3d at 544-45. The ALJ met that standard here by explicitly linking evidence (such as the prior administrative medical findings, normal examination findings, evidence of

7

improvement, denials of symptoms, and the ability to drive) with his finding that Plaintiff's impairments were not severe.

Plaintiff also argues the ALJ ignored examination findings that supported his allegations of disability. These findings included MMSE scores of 24, a single examination finding of impaired memory in August 2021, and examination findings by a chiropractor.[5] [Dkt. 12 at 9-10, 14 (citing R. 511, 514, 559, 681, 684, 719-21).] Plaintiff insists this evidence showed "on its face" that his impairments were severe. [Dkt. 12 at 9.] While the ALJ did not cite these findings, this is not error in and of itself as the ALJ did not "ignore[e] an entire line of evidence that supports a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). As already explained, the state agency reviewing experts discussed the examination findings documenting impaired memory, as well as the MMSE score of 24, and they nevertheless concluded Plaintiff's impairments imposed no functional loss. [R. 93-94.] Moreover, Plaintiff has not explained how these findings compelled a finding of work-related functional loss (nor does an MMSE score of 24 *automatically* indicate such impairments, *see* fn 3, *supra*). Similarly, Plaintiff does not explain how the examination findings of his chiropractor compelled a finding by the ALJ that his impairments limited his ability to engage in basic work activity. Although the chiropractor noted some abnormal findings during the brief, three-month period he treated Plaintiff in 2022 (March 9, 2022 through June 13, 2022, *see* R. 697-775), the ALJ noted most examination findings by treating physicians were normal, showing normal movement in all extremities, full strength, and normal gait. [R. 38-39; *see also* R. 334, 351, 356, 523, 527-28, 532, 537, 541, 544, 548, 552, 556, 563, 567, 570, 573, 635, 639, 643, 646, 650, 653, 657, 663, 666, 670.] Further, the ALJ stressed that Plaintiff testified he had no difficulty walking or sitting. [R. 38 (citing R. 59).] And, the ALJ emphasized, despite imaging showing degenerative disc disease,

---

[5] Although Plaintiff also notes he had "hearing loss," he fails to argue his hearing loss rose to the level of a severe impairment, so this argument has been waived. [Dkt. 12 at 9, 14]; *Schaefer*, 839 F.3d at 607 ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Plaintiff typically denied related symptoms, such as pain. [R. 38.] Plaintiff has failed to establish the ALJ ignored evidence that compelled a finding that his impairments significantly limited his ability to perform basic work activity. The Court cannot remand on this basis.

      **B.**      **The ALJ Properly Evaluated Nurse Reynolds's Opinions**

Plaintiff also alleges the ALJ improperly evaluated the opinions of Family Nurse Practitioner Samantha J. Reynolds, FNP-C. Plaintiff first saw FNP Reynolds in February 2021 pursuant to a consultation request from another of Plaintiff's treaters. [R. 513, 677.] In June 2021, FNP Reynolds completed questionnaires in which she opined Plaintiff had been unable to perform various basic mental activities during an entire eight-hour workday since 2018, some three years before she first saw him. [R. 486-89.] She further opined Plaintiff would be absent from work more than three times a month. [R. 489, 494.] Without identifying any related diagnoses or symptoms, FNP Reynolds opined Plaintiff had some limitations in his ability to stand, walk, and sit. [R. 491.] She indicated Plaintiff would have some limitations related to heights, moving machinery, and chemicals. [R. 494.] She did not feel Plaintiff had any difficulty with lifting or carrying, climbing, balancing, stooping, kneeling, crouching, crawling, or using his arms or hands. [R. 490-93.]

An ALJ is required to discuss supportability and consistency of medical source opinions. 20 C.F.R. § 416.920c(b). The ALJ determined FNP Reynolds's opinion was not persuasive because it was unsupported and inconsistent with the medical record. The ALJ noted that, despite the opinions FNP Reynolds rendered in her questionnaire, FNP Reynolds only documented normal examination findings upon examination of Plaintiff [R. 41]; this is a reasonable basis for the ALJ to have disregarded FNP Reynolds's opinions. 20 C.F.R. § 416.920c(c)(1) (supportability refers to the explanation provided by the medical source and the objective evidence upon which she relied). The ALJ further noted that FNP Reynolds's opinion was inconsistent with the rest of the medical evidence, which, as the Court noted, the ALJ reviewed at some length. [R. 41.] And, as discussed, the ALJ's

9

opinion, read holistically, *Zellweger v. Saul*, 984 F.3d 1251, 1254-55 (7th Cir. 2021), explained that the medical evidence did not support the presence of work-related functional restrictions because the examination findings of record were overwhelmingly normal, Plaintiff's treatment appeared effective, and Plaintiff often denied symptoms. The Court finds this constitutes substantial evidence upon which the ALJ relied when he found Nurse Reynolds's opinion not persuasive.

Although Plaintiff contends the regulations require more articulation of supportability and consistency than the ALJ provided, Plaintiff cites only authority generally articulating that ALJs must discuss the factors of supportability and consistency, which the ALJ did. And while there are other factors an ALJ *may* discuss, the regulations only *require* an ALJ to discuss these two factors. 20 C.F.R. § 416.920c(b)(2). Moreover, none of the evidence Plaintiff cites (*i.e.*, his diagnosis of a mild cognitive impairment which was supported by an EEG, his MMSE score of 24, and the fact one examiner found he had impaired memory on examination in August 2021) compelled the ALJ to determine Plaintiff had any functional restrictions, let alone the disabling ones specified by Nurse Reynolds. *See Nanci R. v. Kijakazi*, No. 21-cv-6295, 2023 WL 9227001, at *3 (N.D. Ill. Dec. 14, 2023) (Holleb Hotaling, M.J.) (claimant failed to cite evidence of functional limitations despite pointing to medical test results; medical studies "are useful in determining whether an impairment is medically determinable, but [they are] less useful in determining the severity of an impairment…"). Again, the ALJ fully acknowledged Plaintiff had been diagnosed with conditions such as degenerative disc disease and cognitive impairment, and that the existence of these diagnoses was supported by imaging of the spine as well as an EEG study. [R. 38-39, 615-17.] But a diagnosis does not prove related functional loss. *Mitchel A. v. Saul*, No. 19-cv-1757, 2020 WL 2324425, at *6 (N.D. Ill. May 11, 2020) (a "diagnosis alone and its potential impact do not demonstrate that [the claimant] is significantly limited in his ability to perform basic work"); *Tracie H. v. Saul*, No. 17-cv-5913, 2019 WL 3385911, at *995 (N.D. Ill. Jul. 26, 2019) ("But a diagnosis is not a disability."). Plaintiff's

reports of improvement and frequent denial of symptoms, the myriad normal examination findings, and the findings made by the state agency experts all support the ALJ's conclusion that Plaintiff's medically determinable impairments did not significantly limit his ability to perform basic work activities. 20 C.F.R. §§ 416.920(c), 416.922. The Court will not overturn the ALJ"s determination on this basis.

### C. The ALJ Properly Evaluated Plaintiff's Subjective Symptoms

Finally, Plaintiff alleges the ALJ improperly evaluated his subjective symptoms. A symptom is a claimant's "own description of [his] physical or mental impairment." 20 C.F.R. § 416.902(n). ALJs evaluate the intensity and persistence of claimants' symptoms by weighing their allegations against other evidence. 20 C.F.R. § 416.929. An ALJ's findings about a claimant's subjective allegations are entitled to deference; as long as an ALJ cites a single valid reason for discounting a claimant's subjective symptoms, the ALJ's subjective symptom assessment cannot be considered "patently wrong." *Burmester*, 920 F.3d at 510; *Green*, 781 F. App'x at 527; *Elder*, 529 F.3d at 413-14 (citations omitted); *Dwayne D. v. Kijakazi*, No. 21-cv-149, 2023 WL 6976897, at *3 (N.D. Ill. Oct. 23, 2023) (citing *Kittelson v. Astrue*, 362 F. App'x 553, 558 (7th Cir. 2010)). Again, the ALJ's analysis of Plaintiff's subjective symptoms should be read holistically within the context of the ALJ's entire decision. *Spiros B. v. Kijakazi*, No. 21-cv-2767, 2023 WL 4306293, at *9 (N.D. Ill. June 30, 2023) (citing *Zellweger*, 984 F.3d at 1254-55).

Here, Plaintiff alleges the ALJ ought to have considered Plaintiff's testimony he experiences a lack of memory and concentration, and that he "sometimes feels lost and doesn't know what he is doing." [Dkt. 12 at 14 (citing R. 58).] Regardless of whether the ALJ parsed the specific statement Plaintiff identifies (which he need not have done), the ALJ did not overlook Plaintiff's overall contention that his cognitive impairment was his primary problem and that it caused difficulty with memory and concentration even though he took medication. [R. 37-38, 57-59.] But the ALJ weighed

11

Plaintiff's statements against other record evidence discussed more fully in Section 3(A), *supra*, to reach his conclusion. The ALJ relied on Plaintiff's consistently normal examination findings, including mental examination findings; the ALJ noted Plaintiff's reports he was benefitting from chiropractic treatment, both with regard to his memory and his spine (Plaintiff even reported that chiropractic treatment "made a big difference in his mental functioning"); the ALJ relied on Plaintiff's own statements to his physicians regarding his health and how his ailments were affecting him; the ALJ considered that Plaintiff retained the ability to drive and perform his household chores, even in light of his professed cognitive abilities. [R. 38-41, 230, 562, 646, 666, 697.] These reasons constitute substantial evidence the ALJ considered (and reasonably discounted) Plaintiff's subjective allegations concerning his lack of memory and concentration. The Court cannot say the ALJ's analysis of Plaintiff's subjective allegations concerning his cognitive functioning was "patently wrong." The Court cannot remand on this basis.

### 4. CONCLUSION

For all the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence and contains the requisite adequate logical bridges between the evidence and his conclusions. The Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment [Dkt. 12] is DENIED and Defendant's motion for summary judgment [Dkt. 17] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

ENTERED: November 12, 2024

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge